I concur in the analysis and disposition of each of the assignments of error except for Assignment of Error 2. Because I believe there was sufficient evidence in the record for a rational trier of fact to find beyond a reasonable doubt that Conley tampered with evidence, I respectfully dissent from the majority analysis and disposition of the second assignment of error.
 {¶ 79} The majority found that the deposition testimony, which was the sole evidence presented at trial on the tampering charge, was not properly admitted into evidence. Specifically, the majority determined that the two depositions of Detective Thomas were not properly admitted into evidence because there was no indication in the record that the trial court ruled on their admission. See Majority Opinion, supra, at note 2. I disagree. Although the prosecutor did not follow ideal procedures, I believe the Thomas depositions were nevertheless sufficiently acknowledged and admitted into the record by the trial judge in a bench trial where the trial judge already had possession of the deposition and had read it in connection with an earlier pretrial motion.
 {¶ 80} The trial record shows the following exchange between the prosecutor, defense counsel, and the court regarding the depositions:
State: I've [sic] prepared to have an individual sit here and gothrough the usual procedure that we do for depositions. Now, we could dothat —
 Defense Counsel: That won't be necessary. I believe the Judge can readand write, and I trust him to be able to read the deposition.
 State: I think the Court's already indicated he's read the deposition?
 Defense Counsel: From my understanding he has.
 Court: The machinations we normally go through with a jury andhaving someone take the place of witnesses are not necessary forme.
 State: I'm going through with what we need to go through.
 Defense Counsel: And I have no objection to — I object to it, ofcourse, but he's already done it, so we don't have to go through anyother procedures other than that.
 State: Okay. The Court has the depositions.
 {¶ 81} The prosecutor then moved to have all of the exhibits on the State's exhibit list admitted into evidence. After a brief discussion regarding those exhibits, the trial court stated, "We'll note the objections. Everything will be admitted." (Emphasis added). Again, although less than ideal, I believe this record is sufficient to establish that the trial court was admitting everything the prosecution was offering as evidence, including the two depositions of Detective Thomas. Moreover, there is nothing in the record to indicate otherwise and appellate counsel has raised no issue on appeal concerning the matter.
 {¶ 82} In sum, while I might admonish the prosecutor in the future to follow her original instincts about the proper way to get a deposition into evidence without relying merely on the general acquiescence of defense counsel or even the court, I would find that the depositions were ultimately admitted into evidence and the record before us in this case. The question that remains is whether or not this evidence was sufficient to prove beyond a reasonable doubt that Conley had tampered with evidence.
 {¶ 83} In order to prove that Conley tampered with evidence by refusing to submit a urine sample, the prosecution was required to prove (1) that Conley altered, destroyed, concealed, or removed something from the authorities (2) with the purpose to impair its value or availability as evidence and (3) with knowledge that an "official proceeding or investigation" is in progress or is likely to begin. R.C. 2921.12(A)(1). Thus, the question in the case sub judice is whether or not Conley's refusal to submit a urine sample in compliance with a valid search warrant can be considered an act of concealment. If so, there is no question that Conley acted to impair the availability of the evidence and with knowledge that an official investigation had already commenced.
 {¶ 84} The American Heritage Dictionary definition of "conceal" is "[t]o hide or keep from observation, discovery, or understanding." The American Heritage Dictionary (2 Ed. 1982) 304. Moreover, Black's Law Dictionary defines "conceal" as "concealment by words or acts of something that one has a duty to reveal." Black's Law Dictionary (8th Ed. 2004). By refusing to provide a urine sample, Conley was certainly withholding the chemical and biological contents of that sample from the discovery or understanding of the State. While appellant has attempted to argue that Conley could not have "concealed" his urine because its location is perfectly obvious to anyone with a cursory understanding of human physiology, it is important to point out that the urine itself is not the only evidence at issue. It is not the urine itself that the state would present to the trier of fact, but the lab results from the urinalysis preformed on the sample. Conley's refusal to produce a sample for analysis is an intentional act to prevent the availability of those lab results as evidence. Accordingly, I would find that Conley's act of refusal constitutes sufficient evidence for a trier of fact to determine that Conley fulfilled all of the elements of R.C. 2921.12(A)(1).
 {¶ 85} Based on the foregoing, I also respectfully disagree with the conclusion reached by this court in State v. Freeman, 2005-Ohio-5842. InFreeman, a majority of this court concluded that the defendant's refusal to produce a urine sample as required by court order could not constitute an overt act of concealment. Id. at ¶ 24. I disagree, and would conclude, as I do in this case, that by refusing to comply with the warrant the criminal suspect has "overtly" acted with the specific intention to prevent the discovery of evidence. In order to obtain the warrant, the State must sufficiently demonstrate that they consider the urine to be potential evidence, and refusing to provide the sample is an overt act to conceal that evidence from the State. Moreover, I disagree with the conclusion of the Court in Freeman that in a case of mere refusal there is no evidence that the urine sample was "altered, destroyed, or removed." Obviously, a urine sample is unique in that over time, the refusal and failure to provide it is surely sufficient to circumstantially establish its disposal.